

PSU-007S
06/08

# LOUISVILLE METRO POLICE DEPARTMENT
## PROFESSIONAL STANDARDS UNIT
### ACCUSED SWORN EMPLOYEE STATEMENT
CASE NUMBER: __12-001__

Today's date is: __Thursday, March 15, 2012__   The time is __0118__ hours.

This is an interview with __Robert Ashenfelter__   Code#: __2728__
Assignment: __5th__   Shift: __1st__

This interview is being conducted at:
☒ Professional Standards Unit Office, 2743 Virginia Avenue Louisville, KY 40211
☐ Other Location: _____

Present during this interview is: __Sergeant Brian Stanfield__ and __Sergeant Paul Neal__

__Officer__   __Robert Ashenfelter__
(Employee Title)   (Employee Name)

Q1 ☑ Are you aware this interview is being tape-recorded?

Q2 ☑ Has anyone threatened you in order to obtain this interview?

Q3 ☑ State your name and code number. Please spell your name.

Q4 ☑ State your unit of assignment, car number, and shift.

Q5 ☑ Are you on duty at the time of this interview?

Q6 ☑ Were you served with a 48 Hour Notice and a copy of an affidavit or Chief's Initiation Letter?

Q7 ☑ Has 48 hours passed since you were served with that notice?

Q8 ☑ Was there enough information on the affidavit or the initiation letter to enable you to answer questions pertaining to this incident and any potential charges that may arise?

Q9 ☑ Are you aware the following interview will be a sworn statement?

Q10 ☑ You have an obligation to answer questions completely and truthfully. If you do not, departmental charges may be placed against you which could result in disciplinary action up to and including termination. Furthermore, as this is an official investigation, you are ordered not to discuss the facts of the incident(s), this investigation or any sworn statements given in this investigation, with anyone other than legal counsel.
Do you understand this?   Yes ☑   No ☐

This interview is being tape-recorded and it will be typed into statement form at a later date. If you desire, you may return to this office to read your statement, make necessary corrections and sign it. You may also obtain a copy of your transcribed statement at a later date. If you provide this office with a blank audiocassette, a copy of this interview will be made for you.
Do you understand this? Yes ☑ No ☐
Do you have any requests before we begin? Yes ☐ No ☑
Requests: _____



PSU-007S
06/08

# LOUISVILLE METRO POLICE DEPARTMENT
## PROFESSIONAL STANDARDS UNIT
### PROFESSIONAL STANDARDS UNIT WARNING
CASE NUMBER: 12-001

Robert Ashenfelter, as an employee of the Louisville Metro Police Department, you are required to give a statement to the investigators of the Professional Standards Unit. The results of your statement or any information derived from your statement may not be used in a criminal proceeding against you, and therefore a privilege against self-incrimination is not applicable in this statement. If you refuse to answer all questions posed to you, administrative charges will be placed against you which could result in disciplinary measures up to and including your termination from the Department. Do you understand these requirements?   Yes ☑   No ☐

**Your interview will be a sworn statement; PLEASE RAISE YOUR RIGHT HAND**

Do you, Robert Ashenfelter, solemnly swear or affirm to tell the truth, the whole truth, and nothing but the truth?

I understand the above oath that I have taken.

X _____    X 3-15-12   X 0122
Signature                           Date         Time

_____         03/15/12     0122
Witness signature                   Date         Time

Subscribed and sworn to me by   Robert Ashenfelter

This 15th day of March, 2012.

_____ 2018           2/24/2019
Notary Public, State at Large             My Commission Expires

Louisville Metro Police Department Professional Standards Unit accused sworn employee statement, Case #12-001. Today's date is Thursday, March 15, 2012. The time is currently 0118 hours. This is an interview with Robert Ashenfelter, code number 2728, assignment Fifth Division, shift First Platoon. This interview is being conducted at the Professional Standards Unit office, 2743 Virginia Avenue, Louisville, Kentucky 40211. Present during this interview is Sergeant Brian Stanfield and Sergeant Paul Neal and Officer Robert Ashenfelter.

| | |
|---|---|
| Stanfield Q1 | Officer Ashenfelter, are you aware this interview is being digitally recorded? |
| Ashenfelter | Yes, I am. |
| Stanfield Q2 | Has anyone threatened you in order to obtain this interview? |
| Ashenfelter | No. |
| Stanfield Q3 | State your name and code number, and please spell your name. |
| Ashenfelter | Robert Ashenfelter, code number 2728, last name is A-S-H-E-N-F-E-L-T-E-R. |
| Stanfield Q4 | State your unit of assignment, car number, and shift. |
| Ashenfelter | Fifth Division First Platoon, car number 5705. |
| Stanfield Q5 | Are you on duty at the time of this interview? |
| Ashenfelter | Yes, I am. |
| Stanfield Q6 | Were you served with a 48 hour notice and a copy of an affidavit or Chief's Initiation Letter? |
| Ashenfelter | Yes. |
| Stanfield Q7 | 48 hours has not passed, is that correct? |
| Ashenfelter | That's correct. |
| Stanfield Q8 | I served you last evening in the Fifth Division, is that correct? |
| Ashenfelter | That's correct. |
| Stanfield Q9 | For the purposes of the recorder this is a 48 hour notice waiver form, we filled that out just prior to going on tape, is that correct? |
| Ashenfelter | That's correct. |
| Stanfield Q10 | Still your wish to waive your 48 hours and speak with us today? |

2

| | |
|---|---|
| Ashenfelter | No problem. |
| Stanfield Q11 | Was there enough information on the affidavit or the initiation letter to enable you to answer questions pertaining to this incident and any potential charges that may arise? |
| Ashenfelter | Yes. |
| Stanfield Q12 | Are you aware the following interview will be a sworn statement? |
| Ashenfelter | Yes. |
| Stanfield Q13 | You have an obligation to answer questions completely and truthfully. If you do not, departmental charges may be placed against you which could result in disciplinary action up to and including termination. Furthermore, as this is an official investigation, you are ordered not to discuss the facts of the incident(s), this investigation or any sworn statements given in this investigation, with anyone other than legal counsel. Do you understand this? |
| Ashenfelter | Yes. |
| Stanfield Q14 | This interview is being digitally recorded, and it will be typed into statement form at a later date. If you desire, you may return to this office to read your statement, make necessary corrections, and sign it. You may also obtain a copy of your transcribed statement at a later date. If you provide this office with a blank audiocassette, a copy of this interview will be made for you. Do you understand this? |
| Ashenfelter | Yes, I do. |
| Stanfield Q15 | Do you have any requests before we begin? |
| Ashenfelter | No. |
| Stanfield Q16 | Robert Ashenfelter, as an employee of the Louisville Metro Police Department, you are required to give a statement to the investigators of the Professional Standards Unit. The results of your statement or any information derived from your statement may not be used in a criminal proceeding against you, and therefore a privilege against self-incrimination is not applicable in this statement. If you refuse to answer all questions posed to you, administrative charges will be placed against you which could result in disciplinary measures up to and including your termination from the Department. Do you understand these requirements? |

| | |
|---|---|
| Ashenfelter | Yes, I do. |
| Stanfield Q17 | Your interview will be a sworn statement. Please raise your right hand. Do you, Robert Ashenfelter, solemnly swear or affirm to tell the truth, the whole truth, and nothing but the truth? |
| Ashenfelter | Yes, I do. |
| Stanfield | Sir if you understand the oath please sign, date and if you will use that clock on your left-hand side. ... Thank you, sir, and Sergeant Neal will witness that. ... For the purposes of the recorder is it okay if I call you Bob? |
| Ashenfelter | Sure. |
| Stanfield Q18 | Bob the reason we're here tonight as you know based on the initiation letter that you got last night is on December 20, 2011 then police chief Ishmon Burks initiated an investigation in regard to a pursuit that took place April 21, 2011, this pursuit started in Jeffersonville, Indiana and went through New Albany, Indiana and came through I264 eventually to 264 Eastbound and then stopped at Breckenridge Lane, uh, do you remember a pursuit involving a white van that took place on that evening? |
| Ashenfelter | Yes, I do. |
| Stanfield | If you could just in your own words speak to any involvement you had, uh, whether you were the actual pursuing vehicle or more in a support role and whatever role you had that evening. |
| Ashenfelter | We were advised by dispatch that I thought it was New Albany PD was in a pursuit and so myself and Officer Ward, my beat is 3's beat, his is 4's beat, so we're in the general vicinity of 264, so we went to Newburg and I264 and stood by and at that time Officer Ward called Sergeant Hamilton on radio and asked him what he wanted us to do, he said do not get involved in the pursuit, but if it comes by into our division he said shadow 'em, and render assistance if needed, so that's what we, those were our orders and the pursuit did proceed east on I264, we saw 'em go by and we both went after 'em, um, I operated my emergency equipment as we are required by policy and I made sure that all we did was shadow 'em or I did and Officer Ward was, he was in his police car ahead of me and I remember it was a rather slow pursuit, I mean it was like, uh, maybe the speed limit 60, 65, so we had no problem catching up to the main group of police cars that were ahead of us and to my recollection I think there was maybe four or five including New Albany and we were well back, wasn't trying to get into the pursuit, we were shadowing just like told by Sergeant |

4

Hamilton and in my mind, uh, I really didn't even put on my emergency equipment because there was no traffic and we weren't in the pursuit and so my mind is well, if it goes past Breckenridge which is the borderline for us in our division I was just gonna turn my equipment and go 10-8, so they got 'em stopped before Breckenridge so I pulled up and this should be on my videotape, I was well back behind, all I did was get out, I ran up about 20, 30 feet from the rear of the van and I was just in a support role, I was just there in case there was a shootout or anything like that and I was acting as a cover officer and Ward was somewhere off in front of me, I think he ran up right to the side of the van if I remember, I could be wrong, but he was in that vicinity, but I stayed in the rear because nobody was over there, and the New Albany officers yellin' to exit the vehicle, all the suspects, our information I should preface this when they put out the initial dispatch I believe it was put out as a carjacking stolen auto and possible hostage situation so I'm thinking maybe shootout and I was just there to cover for 'em and, uh, I think they yelled a few minutes and they finally opened got their side door open and the guy wouldn't come out, I mean, they kept giving him repeated verbal commands to exit and he wouldn't do it, so they pulled him out, I remember seeing 'em grab him by the arms and they pulled him out, put him on the pavement and cuffed him up. End of story.

| | |
|---|---|
| Stanfield Q19 | Do you remember who pulled him out of the vehicle? |
| Ashenfelter | I believe it was New Albany officers, I didn't recognize 'em but they weren't in our uniform. |
| Stanfield Q20 | You've been a police officer for how long? |
| Ashenfelter | 22 years. |
| Stanfield Q21 | And when they pulled him out of the vehicle, the force they used to get him out of the vehicle, could you describe that for me, I mean, was he resisting or did they just ... |
| Ashenfelter | Yeah, he was yellin', I don't know what he was yellin', but I mean they had to yank him out, I mean, it was forcible, they yanked him out onto the pavement, what they had to do. |
| Stanfield Q22 | Was he immediately handcuffed then? |
| Ashenfelter | Yeah, as far as I know, yeah. |
| Stanfield Q23 | Do you ever remember him complaining to you about how he was treated by any of the officers on the scene that night? |

5

| | |
|---|---|
| Ashenfelter | He was upset and I didn't know this until later but I guess the guy had a disability, that's what I was told, and the reason he couldn't come out because he had a problem with his legs but I don't know whether that's true or not, that's what he was yellin' … |
| Stanfield Q24 | But did he complain to you about being assaulted by the police or make any reference to … |
| Ashenfelter | I had no contact with him at all, I didn't speak to him, I didn't touch him, I did walk up later after he was cuffed up just to take a look at him and that was it. |
| Stanfield Q26 | Did you observe any injuries on this person then when you talked up to him? |
| Ashenfelter | I did not observe any injuries and EMS did arrive to take a look at him I believe, if I remember right. |
| Stanfield Q27 | How many officers do you think were there that you remember, I mean, obviously several would show up for an event like that, but as far as the actual pursuit I think you mentioned there were four or five including other agencies initially on the pursuit, do you remember any Cos on the scene that evening? |
| Ashenfelter | Sergeant Hamilton came on the scene later. |
| Stanfield Q28 | And he's the Fifth Division sergeant. |
| Ashenfelter | He's the Fifth Division commander. |
| Stanfield Q29 | Do you remember seeing Sergeant Hamlin there at any point? |
| Ashenfelter | He may have been there, I'm not sure, he may have been there, it's been a year ago … |
| Stanfield Q30 | It's been a while. In relation to, you commented about using your emergency equipment. In reviewing your video there's no audio on that video. Can you speak to why that would be? |
| Ashenfelter | I have a take-home car but it's not a take-home car because I live in Indiana so I park it at 435 South 5th the old water company and the only time I can charge up my audio, my microphone is when I'm on-duty so occasionally I mean I try to keep it tapped up, locked, you know, when I'm on-duty I'll put it on, charge it, sometimes I forget or I'll let it run for two or three days because I keep it in my pocket and I'll forget to turn it off and this just figures on this evening it was dead when I came to work |

6

|  |  |
|---|---|
|  | so I needed up having to put it in charger and for me to drive to the division is about five, six, seven minutes so it was charging there and then after roll call I normally go to Thornton's to gas my car and have a cup of coffee and of course my car is off, so make three or four minutes to get there so I figured that night I probably it charged maybe 13 minutes and according to the transmitter people it takes a hour to a hour and a half to charge that damn thing so I mean, I have no set routine for charging it but like I said I have a little, I'm at a disadvantage to other officers because I'm not an off-duty driving around, I can keep it always charged up, the only time I can charge it is on-duty and my thinking that night actually I knew it was charging but I knew it had only been like 13, 14 minutes of charge time and to me I thought about putting it in but I said it probably wouldn't last one or two minutes if even that, that would be ridiculous either way and as my role as strictly support officer and shadowing I foresaw no police action other than a major shootout to support the other officers if that happened so like I said it was not traffic, so no problem really but I did, I tried to follow policy, I activated my equipment, I had siren, my lights, but my audio was out and even if I had put it in I bet it wouldn't have lasted maybe three or four minutes because it wasn't charged, it was totally discharged. |
| Stanfield Q31 | Now is this based on your own experience from basically get in your car at the water company and past dates that you've worked that it wouldn't have been charged based on your own experience, is that correct? |
| Ashenfelter | Yes. |
| Stanfield | Sergeant Neal, any questions. |
| Neal Q32 | When you saw the gentleman when he was removed from the vehicle, did you use anything excessive the way the officers got him out of the vehicle to make the arrest or to handcuff him to detain him that was inconsistent with any training you've ever received from the police department? |
| Ashenfelter | Not really, I mean, uh, I mean I wasn't paying full attention, once they had him in handcuffs I didn't really care about, but the only thing that looked violent and probably it may be on my video maybe my car was too far away, but they did have to yank, forcibly yank him out, and somebody was observing that that would appear violent but they had no other choice, the guy was not coming out so he did not comply with 'em, I was probably like 40 feet, I mean I was 20 feet from behind the van and from that distance of the van is maybe 30 feet from where he was inside the van of course I couldn't hear what he was saying, I could hear yelling but I don't know if he yelled to tell 'em that he was handicapped or whatever I don't know ... |

7

| | |
|---|---|
| Stanfield Q33 | Based on the seriousness of the run and when it was dispatched to you as a Fifth Division officer, based on your experience do you think the person could be armed in some capacity? |
| Ashenfelter | Oh, definitely, yeah, dispatched information was a carjack and we believed there was a female that had been carjacked and carjack assumes there's some kind of weapon and normally that's a firearm so that's why I took the role where I did position myself strictly as a cover officer in case there was some kind of shootout. |
| Stanfield Q34 | So given that do you think the actions used that evening were appropriate by the officers that actually had hands-on? |
| Ashenfelter | Yes, as far as I could see, yeah. |
| Neal Q35 | As far as when he was removed you said it appeared violent, did it appear that he was savagely beaten by the officers when they removed him? |
| Ashenfelter | No, not at all. |
| Neal Q36 | What about as far as when the dispatched information, they broadcast the information that Indiana units were in pursuit, did they provide the information that this subject may have a disability, um, was anybody aware of that in advance? |
| Ashenfelter | Absolutely not. |
| Neal | I think that's the only thing I have. |
| Stanfield Q37 | I don't have any other questions either. Bob, anything you'd like to provide for this statement that you feel we didn't ask you that you think is important to this investigation? |
| Ashenfelter | Not really. |
| Stanfield | We'll go ahead and conclude the statement, the time is currently 0133 hours. |

**END OF STATEMENT**